**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CITY OF PHILADELPHIA, MAYOR AND CITY COUNCIL OF BALTIMORE, QUINN EMANUEL URQUHART & SULLIVAN, LLP, WOLLMUTH MAHER & DEUTSCH LLP,<br><br>       Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., BANC OF AMERICA SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., CITIGROUP, INC., CITIBANK N.A., CITIGROUP GLOBAL MARKETS INC., CITIGROUP GLOBAL MARKETS LIMITED, GOLDMAN SACHS & CO. LLC, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY & CO. LLC, MORGAN STANLEY CAPITAL GROUP INC., THE ROYAL BANK OF CANADA, RBC CAPITAL MARKETS LLC, WELLS FARGO & CO., WELLS FARGO BANK, N.A., WACHOVIA BANK, N.A., WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO SECURITIES LLC,<br><br>       Defendants. | Misc. Action No.: _____<br><br>Underlying Litigation:<br>19-CV 1608 (JMF) United States District Court for the Southern District of New York |

**MEMORANDUM OF LAW IN SUPPORT MOTION TO TRANSFER,**
**OR, IN THE ALTERNATIVE, MODIFY DEFENDANTS' SUBPOENAS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND .......................................................................................................3

     A.     The Underlying Antitrust Action ..........................................................................3

     B.     Plaintiffs' Counsel's Protected Communications with Mr. Rosenberg and Edelweiss .............................................................................................................5

     C.     Defendants' Subpoenas .......................................................................................6

ARGUMENT ..............................................................................................................................9

I.     THIS COURT SHOULD TRANSFER THE MOTION TO THE ISSUING COURT IN NEW YORK ......................................................................................9

     A.     The Underlying Litigation in the Southern District of New York Will Be Disrupted If Plaintiffs' Motion to Quash Is Not Transferred ..................................9

     B.     Edelweiss Will Not Suffer Undue Burden or Cost If Plaintiffs' Motion to Quash Is Transferred .......................................................................................12

II.     IN THE ALTERNATIVE, THE COURT SHOULD QUASH THE SUBPOENA REQUESTS SEEKING PROTECTED MATERIALS .....................................13

     A.     Movants Have Standing to Quash the Subpoenas .................................................13

     B.     Defendants' Subpoenas Target Protected Materials ..............................................14

          1.     The subpoenas seek privileged communications among Mr. Rosenberg and Quinn Emanuel and WMD. ...............................................14

          2.     The Subpoenas seek material protected by the work product doctrine. .......................................................................................15

          3.     The Subpoenas seek material subject to non-testifying consultant protections.................................................................................16

     C.     Defendants' Justifications for Breaching Work Product Are Unavailing ...............16

          1.     Mr. Rosenberg's purported status as a potential fact witness does not change the applicable protections. ..........................................16

          2.     Defendants lack other grounds to override these protections. ..................18

CONCLUSION.................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Bard v. Brown Cty.*,
  2017 WL 3129802 (S.D. Ohio July 21, 2017) ...................................................................... 21

*Bennett Silvershein Assocs. v. Furman*,
  776 F. Supp. 800 (S.D.N.Y. 1991) ..................................................................................... 14

*Bouchard Transp. Co. v. Associated Elec. & Gas Ins. Servs.*,
  2015 WL 12818828 (D.N.J. Aug. 4, 2015) .......................................................................... 9

*City of Philadelphia v. Bank of Am. Corp.*,
  498 F. Supp. 3d 516 (S.D.N.Y. 2020) .................................................................................. 3

*Costabile v. Westchester, New York*,
  254 F.R.D. 160 (S.D.N.Y. 2008) ....................................................................................... 20

*DeLong Co. v. Syngenta AG*,
  (In re Syngenta AG MIR162 Corn Litig.), 2020 WL 5988498 ........................................... 10

*Doe 1 v. Baylor Univ.*,
  320 F.R.D. 430 (W.D. Tex. 2017) ..................................................................................... 20

*Duck v. United States SEC*,
  317 F.R.D. 321 (D.D.C. 2016) ........................................................................................... 11

*Elec. Data Sys. Corp. v. Steingraber*,
  2003 WL 21653405 (E.D. Tex. July 9, 2003) .................................................................... 19

*Est. of Ungar v. Palestinian Auth.*,
  332 F. App'x 643 (2d Cir. 2009) ....................................................................................... 13

*Genesis Abstract, LLC v. Bibby*,
  2017 WL 1382023 (D.N.J. Apr. 17, 2017 ......................................................................... 13

*Grae v. Corr. Corp. of Am.*,
  326 F.R.D. 482 (M.D. Tenn. 2018) .................................................................................... 19

*Hallmark Cards, Inc. v. Murley*,
  2010 WL 4608678 (S.D.N.Y. Nov. 9, 2010) ..................................................................... 15

*Higher One, Inc. v. TouchNet Info. Sys., Inc.*,
  298 F.R.D. 82 (W.D.N.Y. 2014) ....................................................................................... 18

*Hobley v. Burge*,
  433 F.3d 946 (7th Cir. 2006) ............................................................................................. 14

*Indus. Trucks, Inc. v. Old Republic Ins. Co.*,
　　129 F.R.D. 515 (N.D. Ill. 1990) ................................................................. 17

*Marine Petroleum Co. v. Champlin Petroleum Co.*,
　　641 F.2d 984 (D.C. Cir. 1979) .......................................................... 17,18

*McDaniel v. Freightliner Corp.*,
　　2000 WL 303293 (S.D.N.Y. Mar. 23, 2000) ............................................ 15

*Merck Eprova AG v. ProThera, Inc.*,
　　670 F. Supp. 2d 201 (S.D.N.Y. 2009) .................................................... 14

*Netjumper Software, L.L.C. v. Google, Inc.*,
　　2005 WL 3046271 (S.D.N.Y. Nov. 10, 2005) ......................................... 16

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
　　2018 WL 3677873 (S.D.N.Y. Aug. 2, 2018) ........................................... 19

*Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*,
　　278 F.R.D. 335 (S.D.N.Y. 2011) ............................................................. 19

*Sensormatic Elecs. Corp. v. WG Security Prods., Inc.*,
　　2006 WL 1305166 (E.D. Tex. May 11, 2006) ......................................... 18

*Shelton v. Am. Motors Corp.*,
　　805 F.2d 1323 (8th Cir. 1986) ................................................................ 18

*Turner v. Leavitt*,
　　2008 WL 828033 (W.D. Pa. Mar. 25, 2008) ........................................... 16

*United States v. Adlman*,
　　134 F.3d 1194 (2d Cir. 1998) ................................................................. 16

*United States v. Blue Cross Blue Shield of Michigan*,
　　2012 WL 12930840 (E.D. Mich. May 30, 2012) .................................... 19

*Williams v. Bridgeport Music, Inc.*,
　　300 F.R.D. 120 (S.D.N.Y. 2014) ............................................................ 16

## Rules and Regulations

Fed R. Civ. P. 26(b)(3)(A) ................................................................. 13,16, 18

Fed R. Civ. P. 26(b)(4)(D) ............................................................... 13, 16-18

Fed. R. Civ. P. 45 ................................................................................9-10, 12-1

The City of Philadelphia ("Philadelphia"); the Mayor and City Council of Baltimore

("Baltimore") (together with "Philadelphia," "Plaintiffs"); Quinn Emanuel Urquhart & Sullivan,

LLP ("Quinn Emanuel"); and Wollmuth Maher & Deutsch LLP ("WMD") (together with Quinn

Emanuel, "Plaintiffs' Counsel") respectfully submit this memorandum of law in support of their

motion to (1) transfer this proceeding to the Southern District of New York, the issuing court

where the underlying action is pending; or, in the alternative, (2) quash the portion of the

subpoena served by the above-captioned Defendants on Edelweiss Fund, LLC (the "Subpoena")

that expressly seeks communications between Plaintiffs or Plaintiffs' Counsel or the specific

documents provided in conjunction with these communications.[1]

## PRELIMINARY STATEMENT

Plaintiffs bring this motion to protect themselves against the latest in a series of attempts

by Defendants to intrude upon Plaintiffs' protected work product.  Quinn Emanuel and WMD to

ensure the Subpoena does not improperly reveal their attorney-client privileged communications.

Philadelphia and Baltimore are named plaintiffs in an antitrust class action pending in the

Southern District of New York (the "Antitrust Action") concerning a conspiracy by Defendants

to inflate the interest rates of variable rate demand obligations ("VRDOs").  Quinn Emanuel and

WMD serve as court-appointed Interim Co-Lead Class Counsel for the Antitrust Action with

Susman Godfrey LLP.  VRDOs are a type of bond issued by municipalities like Plaintiffs to fund

key infrastructure projects and other public services.  Defendants consist of some of the largest

financial institutions in the world and served as remarketing agents ("RMAs")—responsible for

resetting VRDO interest rates—for 75% of the VRDOs issued during the alleged conspiracy.

---

[1]    References to "Ex. __" refer to the exhibits to the Declaration of J. Clayton Athey filed
herewith.  In particular, Plaintiffs seek to quash Request Nos. 1-2, 4-6, and 9.  *See* Ex. 3 at 19-23.

Plaintiffs commenced the Antitrust Action in February 2019 following an extensive investigation by Quinn Emanuel and WMD.  As part of their investigation, Quinn Emanuel and WMD retained the services of Mr. Johan Rosenberg, a capital markets advisor and specialist in municipal issuances with over 30 years of experience, who provided guidance and direction during the investigation.  Mr. Rosenberg has no personal knowledge of the alleged conspiracy. However, Mr. Rosenberg's own data analysis spurred government investigations into Defendant's conduct in the VRDO market, and Mr. Rosenberg has brought separate *qui tam* actions in five states against several of the same Defendants in the Antitrust Action.  Edelweiss, the target of the Subpoena, is the entity through which Mr. Rosenberg filed these actions.  Prior to their representation of Plaintiffs, Quinn Emanuel and WMD also discussed the possibility of serving as Mr. Rosenberg's litigation counsel in these *qui tam* actions and provided Mr. Rosenberg with legal advice.

In November 2020, Defendants' motion to dismiss Plaintiffs' antitrust claims was denied. Since the onset of discovery, Defendants have zeroed in on Plaintiffs' protected pre-complaint investigation, including Plaintiffs' Counsel's communications with confidential witnesses as well as with Plaintiffs' non-testifying consultants.  The parties have met and conferred on these requests for over seven months and have corresponded on them as recently as three weeks ago.

In November 2021—nearly a year into discovery and just two months prior to the deadline for substantial completion of document production—Defendants served three virtually identical subpoenas on Mr. Rosenberg and entities he has formed targeting protected communications with Plaintiffs and their counsel.  Defendants' subpoenas seek, among other protected materials, all communications between Mr. Rosenberg and Plaintiffs' Counsel regarding VRDO rates and all documents and communications relating to Plaintiffs' Counsel's

consulting arrangement Mr. Rosenberg.  This Court is the court of compliance for one of three the subpoenas, and the District of Minnesota is the court of compliance for the other two.

In the first instance, the Court should transfer this proceeding to the Southern District of New York, where the Antitrust Action is pending before the Honorable Jesse M. Furman.  Judge Furman has presided over the Antitrust Action for three years, is already familiar with the complexities of the case, and has already ruled on discovery motions regarding Plaintiffs' consultants.  Plaintiffs should not be forced to litigate identical subpoenas in two jurisdictions, expending unnecessary judicial resources and risking inconsistent rulings.

If, however, the Court declines to transfer the proceeding, the Court should quash those portions of the Subpoena that seek plainly protected communications between Plaintiffs' Counsel and their non-testifying consultant, Mr. Rosenberg.

## FACTUAL BACKGROUND

### A.    The Underlying Antitrust Action

Plaintiffs commenced the Antitrust Action on February 20, 2019, on behalf of themselves and a proposed class of VRDO issuers, which consists primarily of local and state public entities. *See The City of Philadelphia, et al. v. Bank of America Corporation, et al.*, 19-cv-1608 (S.D.N.Y.), Dkt. 4.[2]  The Antitrust Action alleges a nearly decades-long conspiracy implemented by Defendants in the VRDO market.  *See* Ex. 4 (Antitrust Action, Dkt. 210) ("Compl.").  VRDOs are primarily tax-exempt, long-term bonds with interest rates that are reset on a periodic basis, typically weekly.  *Id.* ¶ 2.  Although VRDOs are long-term bonds, they enable municipal issuers like Plaintiffs to pay lower rates more characteristic of a short-term

---

[2]    Philadelphia was the only named Plaintiff in the original complaint.  Baltimore filed its complaint a few weeks later, and the two actions have since been consolidated.

security, and public entities have relied on these bonds to fund critical infrastructure and public service mandates.  *Id.* ¶¶ 1-2, 64.  VRDOs have this advantage because they provide their investors with the benefit of being able to redeem the bonds on any given reset date at face value plus accrued interest.  *Id.* ¶ 3, 73-74.

VRDO issuers contract with banks, such as Defendants, to act as re-marketing agents ("RMAs") who are responsible for remarketing and reselling the VRDOs after they are tendered by bondholder-investors as well as for periodically resetting VRDO rates at the lowest possible rate that allow each bond to trade at par.  *Id.* ¶¶ 4, 67.  Defendants served as RMAs for 75 percent of the VRDOs issued during the alleged conspiracy period.  *Id.* ¶ 6.

Rather than honor these obligations, Plaintiffs allege that Defendants colluded to inflate VRDO rates to their own benefit and at the expense of class members.  Defendants were, in part, motivated to do so in order to minimize the chances that they would have to keep the bonds on their books, which they are often required to do if no investors purchase the bonds, and to collect hundreds of millions in RMAs fees without having to actually remarket any bonds.  *Id.* ¶¶ 3, 14, 67, 119.

These allegations are the product of an extensive pre-complaint investigation.  *First,* Plaintiffs' Counsel undertook a comprehensive survey of the industry, ultimately interviewing a number of high-level insiders who worked for Defendants on the desks responsible for setting VRDO rates (the "Insider Witnesses").  *Id.* ¶¶ 9, 11.  These Insider Witnesses, Plaintiffs learned that Defendants communicated almost daily on future rates, often through code words or referring to a benchmark rate:  For instance, according to a former managing director at Defendant Citibank, Defendant personnel would call each other and ask "are you going high or low"; and a former Wells Fargo RMA told Plaintiffs that Defendants would share their current

VRDO inventory levels (as a proxy for future rates) with each other by asking "are you heavy or light?" *Id.* ¶¶ 11, 106, 111; *see also id.* ¶¶ 102-123 (summarizing Insider Witness allegations).

*Second*, Plaintiffs' Counsel retained a team of economic experts to perform an econometric analysis of the VRDO markets. *Id.* ¶¶ 129-153. Using a similar methodology to that which led to the discovery of the LIBOR rate-setting conspiracy and collusion in foreign exchange markets, *id.* ¶ 129, Plaintiffs' econometric studies determined that Defendants' VRDO rates were artificially inflated during the alleged conspiracy period to a statistically significant degree, *id.* ¶¶ 131-36, Defendants' collusion had a market-wide impact, *id.* ¶¶ 137-49, and Defendants' conspiracy-period VRDO rates were abnormally clustered together, *id.* ¶¶ 150-156.

As further support for the plausibility of their allegations, Plaintiffs also point to the existence of government investigations into Defendants' VRDO rate-setting practices. *Id.* ¶¶ 7-8. These investigations had been spurred after Mr. Rosenberg presented regulators with his own data analyses showing irregular VRDO interest rate patterns. *Id.*

### B. Plaintiffs' Counsel's Protected Communications with Mr. Rosenberg and Edelweiss

Mr. Rosenberg served as a consulting expert for Quinn Emanuel and WMD during their pre-complaint investigation. Wollmuth Decl. ¶¶ 7-9. Mr. Rosenberg has over 25 years of experience advising municipalities on the issuance of securities with a focus on municipal bonds and VRDOs, the municipal bond at issue in the Underlying Action. *Id.* ¶ 7. Unlike Plaintiffs' Insider Witnesses, Mr. Rosenberg lacks first-hand knowledge of the alleged conspiracy.

In connection with his advisory work, Mr. Rosenberg observed pricing patterns in the interest rates of VRDOs that he believed could not have been explained by rational market behavior and suggested illicit conduct on the part of RMAs. *Id.* ¶ 7. Mr. Rosenberg brought his analysis to the attention of government regulators in 2015 and 2016, after which the Securities

and Exchange Commission and the U.S. Department of Justice ("DOJ") each began investigating certain of the Defendants.  Ex. 4 (Compl.) ¶¶ 126-28.  Mr. Rosenberg—through Edelweiss, the target of the subpoena—also commenced a series of state *qui tam* actions, bringing False Claims Act claims against several of Defendants in several states.  Wollmuth Decl. ¶ 3.

In May 2016, Quinn Emanuel, WMD, and Mr. Rosenberg first met and discussed the possibility of serving as Mr. Rosenberg and Edelweiss's litigation counsel in the *qui tam* actions. *Id*. ¶¶ 3-6.  Before engaging in any substantive legal discussions, Mr. Rosenberg confirmed with QE and WMD that any communications would be confidential and for the purposes of obtaining legal advice.  *Id*. ¶ 5.  With this understanding, Quinn Emanuel and WMD provided legal advice on and analysis of Mr. Rosenberg and Edelweiss's claims.  *Id*. ¶¶ 3-6.  During this time, Quinn Emanuel and WMD also commenced their investigation into the possibility of an antitrust conspiracy in the VRDO market and approached Mr. Rosenberg about serving as a consulting expert for this investigation.  *Id*. ¶ 8.

Ultimately, in March 2018, Quinn Emanuel, WMD, and Mr. Rosenberg opted not to move forward with their *qui tam* engagement.  *Id*. ¶ 9.  Instead, they formally retained Mr. Rosenberg as a consulting expert, memorialized in a consulting agreement executed on March 15, 2018.  *Id*.  Mr. Rosenberg's extensive experience and observations regarding the industry provided valuable direction in the course of the antitrust investigation.  *Id*.  As part of his engagement, Mr. Rosenberg provided guidance on the VRDO market, and, as a result of his connections in the industry, Mr. Rosenberg also facilitated introductions to some of the Insider Witnesses.  *Id*.

### C.   Defendants' Subpoenas

On November 2, 2020, Judge Furman denied Defendants' motion to dismiss Plaintiffs' antitrust claims in full as well as Plaintiffs' breach of contract claims with respect to the

Defendant RMAs in privity with Plaintiffs.  *See City of Philadelphia v. Bank of Am. Corp.*, 498 F. Supp. 3d 516 (S.D.N.Y. 2020).  The Antitrust Action has since progressed through fact discovery for over a year, and the parties substantially completed their document productions in late January 2022.  All fact discovery is to be concluded by April 25, 2022.

Throughout fact discovery, Defendants have sought to obtain Plaintiffs' Counsel's protected pre-complaint communications with their consultants or other pre-complaint materials that would reveal Plaintiffs' Counsel's mental impressions.  In December 2020 and January 2021, Defendants propounded a series of interrogatories seeking the identity of Plaintiffs' Insider Witnesses as well as the identity of Mr. Rosenberg (which Plaintiffs provided).[3]  On January 14, 2021, Defendants served over 30 document requests relating to documents provided by third parties or otherwise in the possession of Plaintiffs' Counsel.[4]  On August 18, 2021, Defendants served a standalone request for all "Documents received by Plaintiffs' Counsel from Third Parties that relate to VRDOs and/or pertain to allegations in the Complaint."[5]  In response, Plaintiffs have consistently maintained the position that that they will not produce protected communications with their consultants, such as Mr. Rosenberg.[6]  And while Plaintiffs have produced all documents referenced in their complaint as well as its underlying economic

---

[3]  *See, e.g.*, Ex. 5 (Wells Fargo's Interrogatories) at 3 (Interrogatory No. 1) ("Identify the person(s) referenced as a 'whistleblower' in … the Amended Complaint.")

[4]  *See* Ex. 6 (November 15, 2021 e-mail from C. Johnstone) at 9 (listing over thirty requests for which "Plaintiffs continue to refuse to produce responsive documents their attorneys have obtained from third parties"); Ex. 7 (Defendants' First Set of Requests for Production).

[5]  Ex. 8 (Defendants' Second Set of Requests for Production) at 4 (Request No. 67).

[6]  Ex. 6  (January 11, 2022 e-mail from T. Lustzig) at 1 (objecting to discovery into "Communications between outside counsel and retained consultants").

analysis, Plaintiffs have objected to providing all documents their counsel collected as part of their pre-complaint investigation.[7]  Defendants have not moved to compel.

Instead—nearly a year into fact discovery—Defendants, on November 19, 2021, served three identical subpoenas on Plaintiffs' consultant, Mr. Rosenberg; his relator entity, Edelweiss; and his financial advisory firm, Blue Rose Capital Advisors LLC ("Blue Rose"),[8] that, in large part, seek the same protected materials Defendants sought from Plaintiffs.  Defendants' subpoenas request documents including:

- "***All Documents and Communications between or involving You and any Plaintiff or Plaintiffs' Counsel*** regarding VRDO interest rates";

- "All Documents and Communications between or involving You and any law firm regarding VRDO interest rates";

- "***All Documents and Communications You provided to any Plaintiff [or] Plaintiffs' Counsel*** … regarding VRDO interest rates";

- "Documents sufficient to identify when You first communicated with each named Plaintiff … [or] counsel for each of the named Plaintiffs";

- "***All Documents and Communications regarding Your consultation(s) with Plaintiffs***"; and

- "***All Documents and Communications with Plaintiffs [or] Plaintiffs' Counsel*** … regarding any information, data, analyses, or facts You shared with, or brought to the attention of, federal authorities."[9]

Because the court of compliance for the other two subpoenas is the District of Minnesota, Plaintiffs and Plaintiffs' Counsel have commenced proceedings in both districts to protect against Defendants' intrusions on their protected work product and privileged communications.

---

[7]  Ex. 9 (August 4, 2021 e-mail from T. Lepri) at 1 (explaining that "Plaintiffs' objections are limited to documents provided to Plaintiffs' *counsel* by third parties").

[8]  Exs. 1-3.  The Subpoena and Mr. Rosenberg's subpoena contains one request not included in the Blue Rose Subpoena.

[9]  Ex. 3 (Edelweiss Subpoena) at 19-23.

## ARGUMENT

I. **THIS COURT SHOULD TRANSFER THE MOTION TO THE ISSUING COURT IN NEW YORK**

"When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).[10]  Exceptional circumstances on their own are sufficient to warrant transfer.  *See Bouchard Transp. Co. v. Associated Elec. & Gas Ins. Servs.*, 2015 WL 12818828, at *3 (D.N.J. Aug. 4, 2015).

The Court should transfer this motion to the Southern District of New York due to the exceptional circumstances present here.  In determining whether exceptional circumstances exist under Rule 45(f), courts in this District are guided by the Advisory Committee's note to the 2013 amendment to the Rule.  Specifically, "[t]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *N. Atl. Operating Co. v. Dunhuang Grp.*, 2018 WL 3381300, at *1 (D. Del. July 11, 2018) (quoting Fed. R. Civ. P. 45(f), advisory committee's note to 2013 amendment).  "[I]f such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion," transfer is warranted.  *Id.*

A. **The Underlying Litigation in the Southern District of New York Will Be Disrupted If Plaintiffs' Motion to Quash Is Not Transferred**

Defendants' service of duplicative document subpoenas in separate jurisdictions, and Plaintiffs' concurrent motions in this Court and the District of Minnesota to quash the respective

---

[10]   Because the Subpoenas were issued in connection with Antitrust Action, the Southern District of New York is the issuing court. Fed. R. Civ. P. 45(a)(2).

subpoenas on the same grounds, create the prejudicial risk that the two Courts will make different or inconsistent rulings on common questions of privilege and attorney work product that would disrupt the underlying action.  Such risk can be averted by a transfer of Plaintiffs' motions to quash to the Southern District of New York for a single, collective disposition.

The issuing court's management of the underlying litigation is disrupted under Rule 45(f) when "the same issues are likely to arise in discovery in many districts."  *Id.* at *1 (quoting Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment).  Here, the subpoenas served on Edelweiss in Delaware, and on Rosenberg and Blue Rose in Minnesota, seek virtually identical categories of documents.  Thus, unless the motions to quash such subpoenas are transferred to the District Court in New York for joint disposition, this Court and the District Court in Minnesota will each independently decide the same question: whether the attorney-client privilege and attorney work product doctrine preclude discovery of the non-parties' written communications with Plaintiffs' Counsel.  *See In re Syngenta AG MIR162 Corn Litig*, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020) (transfer "may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes") (citation omitted); *see also United States ex rel. Simpson v. Bayer Corp.*, 2016 WL 7239892, at *2 (E.D. Pa. Dec. 15, 2016) (courts "routinely" grant transfer "when there is a risk that the courts will enter orders inconsistent with those entered by the judge presiding over the case.") (citation omitted).  In fact, this Court and the District of Minnesota could reach different conclusions regarding the discoverability of the *same collection* of communications, leaving the issuing court to sort out which communications should be protected or produced.

This risk is particularly acute and harmful here where the motions to quash seek to prevent the production of privileged materials and attorney work product.  The Subpoenas seek

documents containing the non-parties' confidential communications with counsel in both capacities, which Plaintiffs' motions to quash seek to prevent.  Divergent rulings on the motions could lead to the production of materials in one jurisdiction, thereby *waiving* the privilege over the same documents deemed by another court to be privileged.  Transferring the instant motion to quash to the issuing court would help prevent such a prejudicial outcome.  *See Duck v. United States SEC*, 317 F.R.D. 321, 325 (D.D.C. 2016) (transfer warranted to avoid the "potential for inconsistent or conflicting rulings concerning the discoverability of the documents in the possession of the [subpoenaed non-party]").

Judge Furman in the Southern District New York is in the best position to rule on legal issues raised in this motion.  Judge Furman has presided over the case for three years and issued a 34-page opinion denying Defendants' motion to dismiss that closely examined the complex factual issues in the underlying case.  The subpoenas at issue explicitly seek discovery of Rosenberg's and his entities' written communications with Plaintiffs' Counsel regarding many of those allegations, specifically enumerating allegations by paragraph number in the Complaint.[11]

Judge Furman also has ruled on legal questions similar to those raised in this motion.  In September 2021, for instance, Judge Furman considered and denied Defendants' motion seeking to obtain Plaintiffs' engagement agreements with, *inter alia*, non-testifying consultants, finding that "Plaintiffs' proposed compromise - with one modification - is an appropriate way to balance the competing interests involved."  Antitrust Action, Dkt. 238.  And Judge Furman is likely to soon decide discovery motions on the *same set of documents at issue in the Subpoena*, as Defendants have served similar document requests in the Antitrust Action, including for all

---

[11]   *See, e.g.*, Ex. 3 (Edelweiss Subpoena) at 19 & n.1 (Request No. 1) (citing paragraph 7 of the Complaint as part of the basis for the Request).

VRDO-related documents Plaintiffs' Counsel gathered from third parties.[12]  *See N. Atl. Operating Co. v. Dunhuang Grp.*, 2018 WL 3381300, at *2 ("Transfer is likewise appropriate because the issuing court is better suited to decide whether the subpoena should be enforced").[13]

### B.   Edelweiss Will Not Suffer Undue Burden or Cost If Plaintiffs' Motion to Quash Is Transferred

Edelweiss will not suffer undue burden or cost if Plaintiffs' motion to quash is transferred to the District Court in New York.  Edelweiss is not even party to Plaintiffs' motion to quash, and thus the typical consideration under Rule 45(f) of avoiding burdens on local subpoenaed non-parties who are prosecuting the motion to quash is not applicable.  *Cf. United States ex rel. Simpson v. Bayer Corp.*, 2016 WL 7239892, at *1 ("Rule 45 focuses on the burden to local nonparties.").

Even if Edelweiss was to join or intervene in Plaintiffs' motion, it likely would be *less* costly or burdensome for it to do so if the motion is being litigated in New York.  Edelweiss already has engaged counsel in the Southern District of New York who actively are negotiating objections to the Subpoena on its behalf.  Wollmuth Dec. ¶ 12.  Therefore, Edelweiss is represented in the proposed transferee jurisdiction by counsel who are steeped in the privilege questions at issue.  *See Bayer Corp.*, 2016 WL 7239892, at *3 (subpoenaed non-party would not be burdened by transfer where non-party's counsel had an office in the city where the issuing court was located).  In contrast, it appears Edelweiss does not have comparably-situated counsel in this District.  Any burden can also be fully mitigated through a request to appear remotely by video or telephone.  *See* J. Furman, Individual Rules and Practices in Civil Cases R. 2A; *see also*

---

[12]   Ex. 8 (Defendants' Second Set of Requests for Production) at 4 (Request No. 67).

[13]   With fact discovery in the Antitrust Action scheduled to be completed in less than three months, transfer of this motion will aid the action's efficient resolution.  *Id.*  ("resolution of Petitioners' motion is time-sensitive, a factor supporting transfer.").

*Genesis Abstract, LLC v. Bibby*, 2017 WL 1382023, at *2 (D.N.J. Apr. 17, 2017); *United States ex rel. Simpson v. Bayer Corp.*, 2016 WL 7239892, at *3 ("[a]ny minimal burden [] could easily be alleviated, especially in this day and age when 'there are now various ways in which the burdens on remote nonparties can be ameliorated, including the use of telephonic or video conferencing.'").

## II.   IN THE ALTERNATIVE, THE COURT SHOULD QUASH THE SUBPOENA REQUESTS SEEKING PROTECTED MATERIALS

If the Court declines to transfer the motion, it should quash the portions of the Subpoenas that seek protected materials.  "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that … requires disclosure of privilege or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii).[14]  Rule 26(b)(3)(A) protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" from discovery as protected work product.  Rule 26(b)(4)(D) provides that a "party may not … discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

### A.   Movants Have Standing to Quash the Subpoenas

Movants have standing to quash a non-party subpoena where, as here, they seek to protect a privilege or privacy interest.  *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) ("Because Orascom was claiming a privilege regarding the material sought in the subpoena, it had standing to challenge the subpoena); FED. PRAC. & PRO. § 2549 (standing

---

[14]   Because Plaintiffs opted to meet and confer in an attempt to resolve this dispute without litigation, Defendants have represented that they "do not object to Plaintiffs' plan to file a motion no later than February 1," Ex. 10.(Jan. 20, 2022 e-mail from M. Conway) at 1.  As a result, Plaintiffs' motion is timely.

requires a claim of "some personal right or privilege with regard to the documents sought")

(collecting cases).  Because Plaintiffs only seek to quash the portion of the Subpoena that

intrudes upon their work product by seeking Plaintiffs' protected communications or otherwise

reveal Plaintiffs' Counsel's mental impressions, this motion falls well within the parameters of

Rule 45.  Similarly, Quinn Emanuel and WMD bring this motion to protect their attorney-client

privileged communications.  *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("It is well-

established that the work-product privilege may be invoked by either the client or the attorney.").

     **B.**      **Defendants' Subpoenas Target Protected Materials**

          1.    *The subpoenas seek privileged communications among Mr. Rosenberg*
                *and Quinn Emanuel and WMD.*

The Subpoena *expressly* seeks to discover attorney-client privileged communications

among Mr. Rosenberg, Quinn Emanuel, and WMD.[15]  These requests are plainly improper.  Mr.

Rosenberg approached Quinn Emanuel and WMD for the express purpose of securing legal

advice and potentially retaining them as litigation counsel in connection with the *qui tam* action

he has brought through Edelweiss.  That Quinn Emanuel and WMD were never formally

retained in those cases is of no moment.  Rather, the "fiduciary relationship existing between

lawyer and client extends to preliminary consultation by a prospective client with a view to

retention of the lawyer, although actual employment does not result."  *Bennett Silvershein*

*Assocs. v. Furman*, 776 F. Supp. 800, 803 (S.D.N.Y. 1991) (quoting *Westinghouse Elec. Corp. v.*

*Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.)); *see also Merck Eprova AG v. ProThera,*

*Inc.*, 670 F. Supp. 2d 201, 210 (S.D.N.Y. 2009) ("The formation of an attorney-client

relationship hinges upon the client's reasonable belief that he is consulting a lawyer in that

---

    [15]   *See, e.g.*, Ex. 3 (Edelweiss Subpoena) at 19-23 (Request Nos. 1-2, 4-5, 9)

capacity and his manifested intention to seek professional legal advice.") (quotation omitted). Mr. Rosenberg's communications with Quinn Emanuel and WMD were confidential at the time, Wollmuth Decl. ¶ 5, and Mr. Rosenberg has not waived this privilege.

2.      *The Subpoenas seek material protected by the work product doctrine.*

The remainder of Quinn Emanuel and WMD's communications with Mr. Rosenberg are protected by attorney work product as part of the investigation and prosecution of the Antitrust Action.  Defendants' subpoenas to Mr. Rosenberg and Blue Rose demand all communications between Mr. Rosenberg and Plaintiffs and their counsel relating to VRDOs or their consulting agreement, which would include all emails sent to Plaintiffs' Counsel as part of Mr. Rosenberg's consulting work and any documents provided in connection with these communications.[16]

The communications generated as part of Plaintiffs' Counsel's work with Mr. Rosenberg are core work product protected from discovery, as are the documents provided pursuant to those communications.  *See Hallmark Cards, Inc. v. Murley*, 2010 WL 4608678, at *5 (S.D.N.Y. Nov. 9, 2010) ("[C]ommunications between attorneys and the agents or representatives that they have retained in anticipation of litigation—such as consultants and document specialists—are covered by the work-product doctrine."); *McDaniel v. Freightliner Corp.*, 2000 WL 303293, at *7 (S.D.N.Y. Mar. 23, 2000) ("[I]t is settled law that materials produced or information possessed by an attorney's agent, such as an investigator, may also be protected as work product, particularly when disclosure of such information would reveal the attorney's thinking and strategy, i.e., opinion work product.").  Work product protections apply to all of Mr. Rosenberg's communications, regardless of whether they refer to factual material such as the analysis Mr.

---

[16]    *See, e.g.*, Ex. 1 (Rosenberg Subpoena) at 19, 22 (Request Nos. 1,6); Ex. 2 (Blue Rose Subpoena) at 19, 22-23 (Request Nos. 1,6).

Rosenberg provided to the government.  "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)."  *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).  Such is the case here where Mr. Rosenberg was specifically retained to advise on Plaintiffs' pre-complaint investigation, and virtually all of the communications with Plaintiffs occurred *after* the end of the alleged conspiracy in June 2016.  *See* Compl. ¶ 177.

        3.     *The Subpoenas seek material subject to non-testifying consultant protections.*

The Subpoenas also violate Federal Rule of Civil Procedure 26(b)(4)(D)'s specific protections against discovery targeting consulting experts.  Rule 26(b)(4)(D)(ii) plainly protects documents provided to or by a non-testifying consultant, *Netjumper Software, L.L.C. v. Google, Inc.*, 2005 WL 3046271, at *3 (S.D.N.Y. Nov. 10, 2005) ("As discovery from [consultant] is not permitted … an analysis of the nature of each withheld [consultant] document is unnecessary.").  The Rule even protects a consultant's name, *see Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 122-24 (S.D.N.Y. 2014), let alone communications with the consultant.

**C.**      **Defendants' Justifications for Breaching Work Product Are Unavailing**

        1.     *Mr. Rosenberg's purported status as a potential fact witness does not change the applicable protections.*

In meet-and-confers, Defendants have argued that Mr. Rosenberg's purported status as a "dual-hatted" consultant and fact witness overrides any protections that could apply to Mr. Rosenberg's communications.  As an initial matter, any characterization of Mr. Rosenberg as fact witness is off the mark.  Mr. Rosenberg has no personal knowledge of the alleged conspiracy and, unlike the Insider Witnesses, was neither employed by Defendants nor involved in setting VRDO rates.  *See Turner v. Leavitt*, 2008 WL 828033, at *8 (W.D. Pa. Mar. 25, 2008) (experts in gender discrimination litigation "cannot be considered fact witnesses because they lack

personal knowledge" where they neither worked for the defendant employer nor participated in the employer's employee selection process at issue).  Plaintiffs do not attribute any of their primary conspiracy allegations to Mr. Rosenberg, only mentioning Mr. Rosenberg to explain the origins of the SEC and DOJ investigations.  *See* Ex. 4 (Compl.) ¶ 7-8, 126-29.

But even if Mr. Rosenberg were a potential fact witness, Plaintiffs are not objecting to discovery into Mr. Rosenberg's knowledge of any relevant *facts*.[17]  Rather, Plaintiffs seek to quash discovery into the correspondence and materials exchanged *between Mr. Rosenberg and Plaintiffs in his capacity as a litigation consultant*.  Courts have routinely found that work product protections remain regardless of a consultant's potential role as a fact witness.  *See Bard v. Brown Cty.*, 2017 WL 3129802 (S.D. Ohio July 21, 2017) ("[w]here a fact witness [was] retained as a litigation consultant," the "communication and documents exchanged between counsel and [consultant]" were opinion work product); *Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519 (N.D. Ill. 1990) (work protect protection applied to key fact witness retained as consultant, including as to "specific questions that [counsel] has asked him, or even the area of the case to which counsel directed the majority of the questions").

Mr. Rosenberg's communications with Plaintiffs' Counsel also remain protected by Rule 26(b)(4)(D), even assuming Mr. Rosenberg were a potential fact witness.  Where a witness serves a dual role as a consulting expert and fact witness, discovery is permitted concerning the facts known to the witness, but not the facts communicated within the consulting relationship. *See Marine Petroleum Co. v. Champlin Petroleum Co*., 641 F.2d 984, 992 (D.C. Cir. 1979) ("It has aptly been held, however, that one may simultaneously be a litigational expert with Rule

---

[17]  Movants, for instance, do not object to Defendants' requests that focus on the government investigations.  *See, e.g.*, Ex. 3 (Edelweiss Subpoena) at 22 (Request No. 7) (seeking documents related to the "November 2015 whistleblower complaint").

26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others[.]"); *Higher One, Inc. v. TouchNet Info. Sys., Inc*., 298 F.R.D. 82, 86-87 (W.D.N.Y. 2014) ("[A] non-testifying expert witness can be deposed concerning matters that pre-date his retention by the opposing party, 'like an ordinary witness,' subject to the relevancy requirements and any privileges that may apply."); *Sensormatic Elecs. Corp. v. WG Security Prods., Inc.*, 2006 WL 1305166, at *2 (E.D. Tex. May 11, 2006) ("one may simultaneously be a litigation expert with Rule 26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others." (quoting *Marine Petroleum Co.*, 641 F.2d at 992)).

### 2.    *Defendants lack other grounds to override these protections.*

Although a party may seek discovery into fact work product upon a showing that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed R. Civ. P. 26(b)(3)(A)(ii), communications with consultants are attorney opinion work product, "which enjoys nearly absolute immunity and can be discovered in very rare and extraordinary circumstance." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986). And the protections provided to non-testifying experts may only be overcome in "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed R. Civ. P. 26(b)(4)(D)(ii).

Defendants cannot meet any of these standards because they have readily available means to seek any potentially relevant information captured in the requests Plaintiffs seek to quash, *including through other requests in the Subpoenas*. For instance, Defendants have previously stated that they are seeking the data analyses Mr. Rosenberg provided to the government,[18] but to

---

[18]    Ex. 10 (December 29, 2021 e-mail from M. Conway) at 6-7 (seeking Mr. Rosenberg's pre-existing analyses provided to the government); *id.* at (January 5, 2021 from T. Lepri) at 5

the extent such information is relevant, Defendants have already served a corresponding request for "any information, data, analyses, or facts … brought to the attention of, federal authorities."[19]

Yet Defendants seek, on top of this, all "Documents and Communications with Plaintiffs [or] Plaintiffs' Counsel" about these same analyses.  At best, any new information in this request is irrelevant.  *See Pirnik v. Fiat Chrysler Automobiles, N.V.*, 2018 WL 3677873, at *1 (S.D.N.Y. Aug. 2, 2018) (Furman, J.) (quashing subpoena for pre-complaint communications with confidential witnesses because "Defendants fail to show the need for discovery" on this issue); *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 486 (M.D. Tenn. 2018) ("*post hoc* investigation into the sourcing of a complaint's allegations … is untethered to any mechanism, under the Federal Rules of Civil Procedure, for resolving the case").  Whatever Defendants' justification, it falls well short of that required to uncover a roadmap into Plaintiffs' pre-complaint investigation.  *See Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 343 n.9 (S.D.N.Y. 2011) ("That circumstance—in which one party is essentially seeking, and potentially piggybacking on, a roadmap of an adversary's pretrial investigation— implicates core policies behind the work product doctrine."); *United States v. Blue Cross Blue Shield of Michigan*, 2012 WL 12930840, at *2 (E.D. Mich. May 30, 2012) ("Plaintiffs' pre-complaint investigation and facts learned are fact work product that the Court will protect."); *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653405 (E.D. Tex. July 9, 2003) (discovery into pre-complaint investigation "would permit opposing counsel to infer which witnesses counsel considers important … revealing mental impressions and trial strategy").

---

(explaining that Plaintiffs are not objecting to discovery over the "government analyses mentioned in paragraph 7 of the complaint").

[19]   Ex. 1 (Rosenberg Subpoena) at 23 (Request No. 8); Ex.  2 (Blue Rose Subpoena) at 23 (Request No. 7).

Nor have Plaintiffs placed their communications with Mr. Rosenberg at issue or otherwise waived work product protections. "Subject-matter waiver is generally limited to instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege." *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 442 (W.D. Tex. 2017). The typical example consists of "parties invoking the advice-of-counsel defense in litigation." *Id.* To justify their position that Plaintiffs' consulting arrangement with Mr. Rosenberg is at issue, Defendants rely on a single paragraph in the Complaint, referencing the fact that Mr. Rosenberg and Plaintiffs consulted as one of a number of investigative steps they undertook.[20] Even if this paragraph somehow suggested the existence of Plaintiffs' consulting arrangement with Mr. Rosenberg was relevant—which would be pure speculation[21]—this lone paragraph says nothing about Mr. Rosenberg's communications with Plaintiffs, let alone about their *quality and substance*. *See Costabile v. Westchester, New York*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008) ("This is not a case in which the plaintiffs are attempting to use the report as both a sword and a shield by using the privilege to prejudice defendants' case or to disclose some selected communications or documents for self-serving purposes").

## CONCLUSION

For the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court transfer this proceeding to the Southern District of New York, or, in the alternative, quash the requests seeking protected material.

---

[20] *See* Compl. ¶ 172 ("Plaintiffs were only able to uncover Defendants' conspiracy through an extensive investigation commencing in the middle of 2016 that involved, among other things: (i) consulting with an industry whistleblower; (ii) interviewing numerous industry insiders; and (iii) an extensive and expensive analysis of VRDO data over several years that required a full team of experts to yield the information contained in this Complaint.").

[21] Plaintiffs' motion to dismiss, for instance, does not mention their consultant with Mr. Rosenberg to support any of its claims or defenses. *See, e.g.*, Antitrust Action, Dkt. 130.

Dated: February 1, 2022

OF COUNSEL :

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Daniel L. Brockett
Steig D. Olson
Sami H. Rashid
Thomas Lepri
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
samirashid@quinnemanuel.com
thomaslepri@quinnemanuel.com


Jeremy D. Andersen
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Co-Lead Counsel for Movants*


WOLLMUTH MAHER & DEUTSCH LLP
David H. Wollmuth
William A. Maher
Ronald J. Aranoff
Brant Duncan Kuehn
500 Fifth Avenue
New York, New York 10100
Telephone: (212) 382-3300
dwollmuth@wmd-law.com
wmaher@wmd-law.com
raranoff@wmd-law.com
bkuehn@wmd-law.com

*Co-Lead Counsel for Movants*

**PRICKETT, JONES & ELLIOTT, P.A.**

By**:** */s/ J. Clayton Athey*
   J. Clayton Athey (#4378)
   1310 King Street
   Wilmington, Delaware 19801
   (302) 888-6500
   jcathey@prickett.com

*Counsel for Movants*

21

SUSMAN GODFREY LLP
William Christopher Carmody
Arun Subramanian
Seth Ard
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com

Katherine M. Peaslee
1201 Third Avenue Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883
kpeaslee@susmangodfrey.com

*Co-Lead Counsel for Movants*